## Devenney et al. *v.* Pennsylvania Railroad, Appellant.

*Negligence—Railroads — Crossings — Pedestrian — Contact of trainman jumping from train with pedestrian—Obvious danger—Contributory negligence.*

1. Where a pedestrian at half past ten at night, stops within four feet of the tracks of a railroad at a crossing to wait until a train passes, and a trainman leaps from the train at the crossing,

410    DEVENNEY et al. *v.* PENNA. R. R. CO., Appel.

and strikes with his body the pedestrian so that the latter is forced against one of the moving cars and is injured, the negligence of the trainman, is a question for the jury.

2. In such case the plaintiff's contributory negligence is for the jury, where the evidence shows that the eastern gate, within which plaintiff stood at the time, was down, but that it was thirty-three feet from the near rail at the crossing, that plaintiff did not appear to have passed the gate, but approached the place where he stood, by a dirt road, which ran between the track and the east side of the street, and there is no evidence to show that it was usual and customary for a trainman to jump from the train at the crossing.

Argued January 17, 1924.   Appeals, Nos. 128, 129, Jan. T., 1924, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1921, No. 5647, on verdict for plaintiff, in case of Joseph Devenney, by his father and next friend, Edward Devenney, and Edward Devenney, v. Penna. R. R. Co.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for personal injuries.   Before AUDENRIED, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for Joseph Devenney for $5,000, and for Edward Devenney for $480.   Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*Francis B. Biddle,* of *Barnes, Biddle & Morris,* for appellant, cited: Cleary v. R. R., 140 Pa. 19; Sheehan v. R. R., 166 Pa. 354; Baltimore & Ohio R. R. v. Schwindling, 101 Pa. 258; Schmidt v. R. R., 149 Pa. 357; Joyce v. R. R., 230 Pa. 1; Seiwell v. Hines, 273 Pa. 259; Penna. R. R. v. Bell, 122 Pa. 58; Keller v. Ry., 214 Pa. 82; Leard v. R. R., 255 Pa. 289.

*John R. K. Scott* and *William T. Connor,* for appellee, were not heard.

PER CURIAM, February 11, 1924:

The court below correctly states the facts in this case as follows: "The accident occurred at Twenty-fifth and Morris streets, Philadelphia [at about 10:30] o'clock on the evening of October 31, 1921. Morris Street was then a legally opened highway......[extending] east and west. It is paved, and on it is laid a street railway track, on which electric cars move in a westerly direction. A paved footway extends along its south side, ending at the east line of Twenty-fifth Street and beginning again at the west line of that street. Twenty-fifth Street runs north and south, and was, at the time of the accident, a legally opened highway; where it intersects Morris Street it is one hundred feet wide. It is not paved and has no foot walk blocked out. The centre line of Twenty-fifth Street coincides with the centre line of a·thirty-feet-wide strip of ground on which are laid two railroad tracks, seven feet six inches apart. Between this strip [which is owned in fee by the railroad company] and the east line of the street is a dirt road used by teamsters and others who have occasion to go to or from the coal yards, etc., situated on that side of the street, south of Morris Street. A siding has been laid on the wagon road just referred to for the purpose of connecting these business establishments with the main tracks in the centre of the street......[which] are maintained and used by defendant, whose southbound trains normally pass over that further west, while the other track is traversed by its trains bound north. On each side of its tracks at this crossing defendant maintains a safety gate. These are operated by a watchman. That on the eastern side of the crossing is located thirty-three feet from the east rail of the northbound track; the western gate is ten feet away from the southbound track. On the evening of the accident, Joseph Devenney [20 years old] and his brother Edward·...... intending to take a street car that would bring them to their home......walked to Twenty-fifth and Morris

streets, where they expected to find such a conveyance
[their purpose being to walk across the railroad at Morris Street to the west side of Twenty-fifth Street, where
the trolley cars stopped to take on passengers]. They
approached this point from the south, walking along the
wagon road on [the east side of] Twenty-fifth Street.
As they reached Morris Street......a train of cars moving southward......[was in the act of crossing that
highway, at "between five and ten miles an hour"].
Joseph Devenney stopped, in the line of the sidewalk,
on the south side of Morris Street, at a point ["a little
more than"] four feet to the east of the track upon which
the train was passing. He stood with his back to the
north, looking toward the southwest. His brother stood
a few feet south of him......As one of the passing cars
neared the south side of Morris Street, a member of the
crew, employed by the defendant to operate the train of
which the car formed a part, suddenly leaped from its
step and alighted a little to the north of where plaintiff
stood. The speed at which the train was moving imparted a momentum to the body of the trainman sufficient to bring him into contact with plaintiff. The impact forced the latter against one of the moving cars;
and by this he was hurled to the ground in such a way
that his left hand came into contact with the flange of
one of its wheels. The hand was badly mutilated."

In its opinion disposing of defendant's claims,—that
the evidence showed no negligence on its part and that
it was entitled to binding instructions on the ground of
Joseph Devenney's contributory negligence, which are
the only contentions urged on this appeal,—the court
below properly said: "The facts took to the jury the
question whether defendant's employee who figured in
the accident was guilty of negligence. The train on
which he was working had reached a public crossing.
There he might have expected, even as late as 10:15
[10:30] p. m., to find pedestrians waiting for a chance
to pass from one side of the tracks to the other. He had

no greater right to jump from the train at that place than he had to throw from it there a piece of freight or baggage. In order to make sure that he would harm nobody, he should have looked before he leaped; had he done so he might have observed the two boys, and the jury might well say that his failure to take such a precaution was negligence. If he saw the plaintiff, he should have either warned him to get out of the way or waited until he could alight without injuring him. Which course he should have taken and whether he failed to do what he should have done were for the jury to decide. The trial judge could not lawfully declare that the trainman acted with due care under the circumstances."

As to Joseph Devenney's contributory negligence, the court said: "It is [urged] that the younger plaintiff ......should have anticipated that the exigencies of the operation of the train which he saw passing might involve the jumping from it of some member of its crew, and that he should have avoided all harm from such a cause by standing outside the eastern gate at the Morris Street crossing. To this it may fairly be answered that no evidence was produced to show it is a usual or common thing for the men who form the crew of a railroad train to leap from it while in motion and therefore it is the [duty] of a reasonable man to anticipate and guard against danger of harm thus arising. Moreover the question how close to a track on which a railroad train is moving a man, in the exercise of reasonable care for his safety, may take his stand on a public highway, is not to be finally determined by the railroad company. ......That question depends in every case on the peculiar facts and circumstances present; no general rule can be laid down by the court, and defendant itself is not committed to a definite view on the question. Its eastern gate is thirty-three feet from the near rail at this crossing; its western gate ten feet from the track. In this connection it is to be recalled also that the Deven-

neys came to Morris Street over the dirt wagon road between the tracks and the east side of Twenty-fifth Street. [They did not go under closed safety gates, so far as the evidence shows, and] it does appear that they [even] passed the defendant's safety gates [at Morris Street, although these gates were lowered at the time of the accident and the injured man probably stood opposite the end of one of them]. Whether Joseph Devenney failed to exercise reasonable care for his safety was for the jury."

We need add only that this is not within the line of cases cited by appellant where the right of recovery was refused because one stood so close to railroad tracks that the overhang of the cars or some other readily anticipated cause was responsible for an ensuing accident.

The judgments for the minor plaintiff, Joseph Devenney, and for his father, Edward Devenney, are both affirmed.